United States District Court
Southern District of Texas

**ENTERED**
April 12, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| CRISTIAN ALBERTO BANEGAS AVILA, §§§§§ | |
| Petitioner, §§ | |
| vs. § | CIVIL ACTION NO. H-26-916 |
| MARTIN FRINK, Warden, Houston Contract Detention Facility, *et al.*, §§§§§ | |
| Respondents. § | |

**MEMORANDUM AND OPINION**

The petitioner, Cristian Alberto Banegas Avila, is a detainee in the custody of United States Department of Homeland Security, Immigration and Customs Enforcement (ICE) officials at the Houston Contract Detention Facility. Through counsel, he has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 challenging his continued detention. (Docket Entry No. 1). Banegas Avila is a Honduran national who has lived in the United States since July 4, 2010, when he entered without inspection at the age of 15. (*Id.* ¶ 19). He later married a lawful permanent resident. (*Id.* ¶ 20). They have three children together; they rent an apartment in Houston; and Banegas Avila regularly pays his taxes. (*Id.* ¶ 20). Banegas Avila's criminal history is a DWI offense committed in 2022, for which he served three days in Harris County Jail and paid $100 in fees. (*Id.* ¶ 21).[1] Banegas Avila has been in ICE custody since October 1, 2025, (Docket Entry No. 12 at 1), and argues that the Constitution entitles him to a bond hearing when his prolonged detention has become unreasonable. (Docket Entry No. 1 at 11–13). The court agrees.

---

[1] The parties dispute whether there is a state theft or larceny charge still pending. (*Compare* Docket Entry No. 1 ¶ 21 (theft charge dropped for lack of evidence), *with* Docket Entry No. 11-1 ¶ 14 (larceny charges still pending)).

The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person "of life, liberty, or property, without due process of law."  U.S. CONST. amend. V.  Its guarantee is both procedural and substantive.  *Washington v. Glucksberg*, 521 U.S. 702, 719–20 (1997); *see Hurtado v. California*, 110 U.S. 516, 532 (1884) ("[The Due Process Clauses] must be held to guaranty, not particular forms of procedure, but the very substance of individual rights to life, liberty, and property.").  It secures rights that are "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed."  *Glucksberg*, 521 U.S. at 720– 21 (cleaned up); *cf. Corfield v. Coryell*, 6 F. Cas. 546, 551 (C.C.E.D. Pa. 1825) (No. 3,230) (Washington, Circuit Justice) (holding that the Privileges and Immunities Clause secures those fundamental rights that "have, at all times, been enjoyed by the citizens of the several states which compose this Union").  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

The Due Process Clause's guarantee of freedom from physical restraint is not absolute. The Supreme Court has held that the government may detain individuals under court order in a criminal proceeding after providing adequate procedural protections, *see United States v. Salerno*, 481 U.S. 739, 746 (1987), "or, in certain special and 'narrow' nonpunitive 'circumstances,' where a special justification, such as harm-threatening mental illness, outweighs the 'individual's constitutionally protected interest in avoiding physical restraint,'" *Zadvydas*, 533 U.S. at 690 (first quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); and then quoting *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997)).  Alien removal presents one of those narrow circumstances in which the government's interest in detention is heightened.  Although the Due Process Clause protects "any

person," and its protection against physical restraint extends, at least facially, to aliens, *id.* at 693–94 (citing *Plyler v. Doe*, 457 U.S. 202, 210 (1982)), Congress, through its power to regulate naturalization, "regularly makes rules that would be unacceptable if applied to citizens," *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (quoting *Mathews v. Diaz*, 426 U.S. 67, 80 (1976)).  Three cases from the Supreme Court explain the constitutional boundaries of the government's authority to detain aliens as part of the removal process: *Carlson v. Landon*; *Zadvydas v. Davis*; and *Demore v. Kim*.[2]

First, in *Carlson v. Landon*, 342 U.S. 524 (1952), the Court considered a challenge to the detention of aliens deportable because of their participation in Communist activities.  The detained aliens did not challenge their Communist Party membership or that they were, as a result, deportable.  *Id.* at 530.  The detained aliens argued that detention was unnecessary because they would report to their deportation proceedings and comply with court orders.  *Id.* at 531–32.  The Attorney General denied bond based on a legal conclusion that Congress had made alien Communists unbailable.  *See id.* at 559, 564, 568 (Frankfurter, J., dissenting).  The Court rejected the aliens' challenge under the Eighth Amendment, explaining that "[d]etention is necessarily a part of this deportation procedure."  *Id.* at 538.  The Court reasoned that Congress made Communist aliens deportable based on their propensity for using violence to accomplish their political aims.  *Id.* at 541.  Congress's legislative determination that Communist aliens posed a public danger allowed the government to deny bail without a finding that they posed a flight risk.

---

[2] Earlier, in *Wong Wing v. United States*, 163 U.S. 228, 238 (1896), the Court held that alien detainees could not be sentenced to hard labor.  In the majority opinion, the Supreme Court stated "that detention or temporary confinement, as part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens, would be valid."  *Id.* at 235.  It reasoned that "[p]roceedings to exclude or expel would be vain if those accused could not be held in custody pending the inquiry into their true character, and while arrangements were being made for their deportation."  *Id.*  The court did not address whether detention for a substantial period of time without bond was permissible.

*Id.* at 538, 543–44.  The Court noted, however, that the case did not present "the problem of habeas corpus after unusual delay in deportation hearings."  *Id.* at 546 (citing *U.S. ex rel. Potash v. Dist. Dir. of Immigr. & Nat. at Port of N.Y.*, 169 F.2d 747, 751 (2d Cir. 1948)).

Second, in *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Court considered a due-process challenge to detention of aliens after a final order of removal.  The Court held that 8 U.S.C. § 1231 authorized the government to hold aliens following the mandatory 90-day removal period for only such time as is reasonably necessary to effect removal.  *Id.* at 699.  The Court held that a statute permitting indefinite detention "would raise a serious constitutional problem."  *Id.* at 690.  Because the detention statute was "civil, not criminal," and was "nonpunitive in purpose and effect," the Constitution required the government to justify detention based on a special regulatory justification.  *Id.*  The Court could find "no sufficiently strong special justification [ ] for indefinite civil detention."  *Id.*  The flight risk for aliens deemed removable "is weak or nonexistent where removal seems a remote possibility at best," and "preventive detention based on dangerousness" is permissible "only when limited to specially dangerous individuals and subject to strong procedural protections," including the length of the detention.  *Id.* at 690–91.  The Court added that an "alien's removable status itself . . . bears no relation to a detainee's dangerousness."  *Id.* at 692.  Based on these considerations, the Supreme Court ruled that "an alien's liberty interest is, at the least, strong enough to raise a serious question as to whether, irrespective of the procedures used, the Constitution permits detention that is indefinite and potentially permanent."  *Id.* at 696 (citations omitted).

Third, in *Demore v. Kim*, 538 U.S. 510 (2003), the Court considered whether the government could, under 8 U.S.C. § 1226(c), detain without bond a removable alien who has been convicted of one of a specified set of crimes.  The court ruled that the statute was constitutional.

Like the detentions in *Carlson*, detention under § 1226(c) is based on considered legislative determinations that the limited subset within its reach posed a unique danger and flight risk. *See id.* at 518–20, 528. It then distinguished *Zadvydas* in two critical respects. First, the aliens in *Zadvydas* challenged detention because removal was "no longer practically attainable," *Zadvydas*, 533 U.S. at 690, and because detention "did not serve its purported immigration purpose," *Demore*, 538 U.S. at 527. Because § 1226(c) governs "detention of deportable criminal aliens pending their removal proceedings," the statute "necessarily serves" an immigration purpose by "increasing the chance that, if ordered removed, the aliens will be successfully removed." *Id.* at 527–28 (emphasis omitted). Second, the aliens in *Zadvydas* challenged indefinite and potentially permanent detention, whereas the aliens in *Demore* challenged detention "of a much shorter duration." *Id.* at 528. The Court explained that "[u]nder § 1226(c), not only does detention have a definite termination point, in the majority of cases it lasts for less than the 90 days" that the Court "considered presumptively valid in *Zadvydas*"; "the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal." *Id.* at 529–30. The Court concluded that "[d]etention during removal proceedings is a constitutionally permissible part of that process" and that detention of "a criminal alien who has conceded that he is deportable, for the limited period of his removal proceedings" is allowed under *Wong Wing*, *Carlson*, and their progeny. *Id.* at 531.

The throughline in these cases is that an alien "could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Id.* at 532 (Kennedy, J., concurring) (citing *Zadvydas*, 533 U.S. at 684–86). In each case the Court stressed that a limited period of detention was necessary to serve

Congressional policy of a swift deportation without unreasonable delay. *See Carlson*, 342 U.S. at 545–46 (upholding the temporary detention of alien during deportation proceeding while noting that "problem of . . . unusual delay" was not present); *Zadvydas*, 533 U.S. at 691 (finding constitutional concern that "[t]he civil confinement here at issue is not limited, but potentially permanent"); *Demore*, 538 U.S. at 529 (emphasizing that detention has "a definite termination point" when it often lasts for fewer than 90 days and seldom more than six months). The Court also emphasized that detention was justified because Congress targeted a narrow subset of deportable aliens who posed specific concerns. *Compare Carlson*, 342 U.S. at 534–37 (discussing Congress's rationale for detaining deportable aliens who are members of the Communist Party), *and Demore*, 538 U.S. at 518–20 (discussing Congress's rationale for detaining deportable aliens with certain criminal convictions), *with Zadvydas*, 533 U.S. at 691 ("[T]he alien's removable status itself . . . bears no relation to a detainee's dangerousness."). These principles underlie the Court's detention cases. *See, e.g.*, *Salerno*, 481 U.S. at 747 (noting that the "maximum length of pretrial detention is limited" by "stringent" requirements).

Based on these principles, most of the courts of appeals that have addressed the issue have concluded that the Due Process Clause requires an individualized assessment of flight risk and danger when detention becomes unreasonable in relation to the statute's purpose of facilitating lawful removal. *See, e.g.*, *Reid v. Donelan*, 17 F.4th 1, 7 (1st Cir. 2021) (concluding that the Due Process Clause limits mandatory detention under 8 U.S.C. § 1226(c)); *Black v. Decker*, 103 F.4th 133, 145 (2d Cir. 2024) (same); *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 210 (3d Cir. 2020) (same). *But see Wekesa v. U.S. Att'y*, No. 22-10260, 2022 WL 17175818, at *1 (5th Cir. Nov. 22, 2022); *Banyee v. Garland*, 115 F.4th 928, 930 (8th Cir. 2024).[3] The Third

---

[3] "Because *Wekesa* is an unpublished opinion, it has no binding precedential value, and the Court considers it only to the extent it is persuasive on the force of its own reasoning." *Lopez-Arevelo v. Ripa*, 801 F. Supp.

Circuit has "identified four 'nonexhaustive' factors governing when detention is unreasonable," which this court finds persuasive: "the length of detention, the likelihood it will continue, the reasons for delay, and how confinement conditions compare to criminal punishment." *Michelin v. Warden Moshannon Valley Corr. Ctr.*, 169 F.4th 418, 433 (3d Cir. 2026) (citing *German Santos*, 965 F.3d at 210). "The most important factor is the duration of detention," under which detention "becomes more and more suspect after five months." *German Santos*, 965 F.3d at 210 (cleaned up); *see Michelin*, 169 F.4th 433–34 (citing cases that have held that detention becomes unreasonable sometime between six months and a year after it begins). Detention of more than twenty months "by itself may be constitutionally impermissible without addressing the other factors." *M.D.F. v. Johnson*, No. 3:20-CV-0829-G-BK, 2020 WL 7090125, at *1 (N.D. Tex. Dec. 3, 2020) (collecting cases).

In this case, Banegas Avila has been detained for more than six months, rendering his detention suspect, and his immigration proceedings are likely to continue for some time. Banegas Avila filed his immigration appeal on February 25, 2026, and the Board of Immigration Appeals has not issued a briefing schedule yet. (Docket Entry No. 12 at 3). Hundreds of thousands of appeals are pending before the BIA, (Docket Entry No. 12-1), and the government reduced the number of judges on the BIA from 28 to 15, (*see* Docket Entry No. 12-2). These facts matter because courts "do not hold an alien's good-faith challenge to his removal against him, even if his appeals or applications for relief have drawn out the proceedings." *German Santos*, 965 F.3d at 211. "Doing so, and counting this extra time as reasonable, would effectively punish an alien for

---

3d 668, 683 (W.D. Tex. 2025) (citing 5th Cir. L.R. 47.5). "It is not clear to this Court that the *Wekesa* majority addressed a constitutional claim in the first instance. To the extent it did so, the Court agrees with Judge Dennis' statement in dissent that 'the Constitution does impose limits on the length of time the Government may detain a noncitizen without a bond hearing.'" *Rodriguez v. Frink*, No. 4:26-CV-00798, 2026 WL 709487, at *4 (S.D. Tex. Mar. 13, 2026) (quoting *Wekesa*, 2022 WL 17175818, at *2 (Dennis, J., dissenting)).

pursuing applicable legal remedies." *Id.* (cleaned up). The government does not argue that Banegas Avila's appeal was taken in bad faith. (*See* Docket Entry No. 11 at 4). By the time the BIA rules, Banegas Avila will have been in custody for at least a year, possibly much longer. *See Rodriguez v. Frink*, No. 4:26-CV-00798, 2026 WL 709487, at *4 (S.D. Tex. Mar. 13, 2026) ("[T]his Court has addressed dozens of immigration habeas cases in recent months, and it is clear from the facts of these cases that removal proceedings often take several years . . . ."). It is possible that Banegas Avila's detention would have been purposeless, for there is little evidence in the record that he is a danger or flight risk. These two factors are near determinative of Banegas Avila's due-process claim.

The government argues that Banegas Avila's detention is reasonable and constitutional because courts have only granted habeas relief after longer periods of detention, (*see* Docket Entry No. 11 at 3); because Banegas Avila has delayed his immigration proceedings, (*id.* at 4–5); and because his conditions of confinement differ materially from criminal confinement, (*id.* at 5). These arguments are not persuasive.

First, Banegas Avila has been detained for more than the "suspect" period of five months. *German Santos*, 965 F.3d at 210. Although the petitioners in *German Santos* and *Michelin* were detained for much longer than five months, the Third Circuit was clear that detention "became" unreasonable well before they were released. *See id.* at 211 (citing *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469 (3d Cir. 2015), *abrogated in part on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018)); *Michelin*, 169 F.4th 433–34. After *German Santos* and *Michelin*, courts have denied habeas relief when petitioners are confined for longer periods because their immigration proceedings were clearly at their end; ordering a bond hearing and their release would offer little relief. *See, e.g., Appiah v. Lowe*, No. 3:24-CV-2222, 2025 WL 510974,

8

at *4 (M.D. Pa. Feb. 14, 2025) (explaining that a Second Circuit ruling was likely to occur within the year).  That is not the case here.  Banegas Avila's detention is past the point where detention is presumptively reasonable, and the end of his immigration proceedings is not in sight.

Second, Banegas Avila's requests for continuances are minimal relative to his likely period of detention.  The record shows that Banegas Avila delayed his immigration proceedings to find counsel and to prepare for proceedings.  (Docket Entry No. 11-1 ¶¶ 13).  But the court cannot hold every continuance against Banegas Avila.  Just as courts do not fault litigants for good-faith appeals, they do not fault them for good-faith and minimal extensions to find counsel and allow counsel to get up to speed.  *See German Santos*, 965 F.3d at 212 (declining to weigh, for either the petitioner or the government, usual mistakes or errors in the course of immigration proceedings).  Banegas Avila's continuances may have strayed beyond a reasonable period of time because he continued his immigration proceedings into January and February.  *See Leslie v. Att'y Gen. of U.S.*, 678 F.3d 265, 270–71 (3d Cir. 2012) (weighing a five five-week continuance).  Even so, this case is not like *Demore*, where the Court upheld a six-month detention that was "longer than [ ] average" because the petitioner had asked for a continuance.  538 U.S. at 531.  The delay will likely be a "drop in the bucket" of Banegas Avila's full detention period.  *German Santos*, 965 F.3d at 212; *cf. Demore*, 538 U.S. at 529–31 (suggesting that detention of longer than six months without petitioner-caused delay is an unusual outlier).  This factor does not weigh in either side's favor.

Third, the conditions of confinement do not outweigh the first two factors.  The government argues that Banegas Avila is not confined to a cell but detained in a dormitory setting with other immigration detainees with similar criminal backgrounds.  (Docket Entry No. 11-1 ¶ 14).  Banegas Avila argues that he is detained "in a medium-security, for-profit facility is functionally indistinguishable from criminal incarceration."  (Docket Entry No. 12 at 4).  Banegas Avila relies

9

on news reports of conditions in ICE facilities to demonstrate their inhuman conditions. (Docket Entry No. 12-4). This factual dispute does not "clarify the matter either" or weigh in either side's favor. *Michelin*, 169 F.4th at 434. The conditions of confinement are not as bad as in *German Santos*, where the petitioner was confined for 23 hours of the day. 965 F.3d at 213. But pod-style confinement, or potentially dormitory-style confinement, can still be "penal in nature." *Michelin*, 169 F.4th at 434 (considering the petitioner's testimony that the conditions "were worse than those he experienced in federal criminal custody"). Although Banegas Avila's precise conditions of confinement are unclear, even accepting that they are not like in *German Santos*, this factor does not weigh so heavily in the government's favor that it outweighs the government's loss on the first two. *See id.*

For these reasons, Banegas Avila's detention is unreasonable and violates the Fifth Amendment's Due Process Clause. The remaining question is the proper remedy. Because the Constitution does not prevent the government from detaining aliens in Banegas Avila's position if they pose a danger or flight risk, *Zadvydas*, 533 U.S. at 690–91, the appropriate remedy is a hearing to make such a determination. Releasing Banegas Avila without those findings would ignore completely Congress's decision to detain aliens pending their immigration proceedings. *See id.* at 690 (explaining that special justifications can outweigh an individual's protected interest in avoiding physical restraint). The "appropriate remedy is a bond hearing at which the Government bears the burden of proving by clear and convincing evidence that 'continued detention is needed to prevent [the noncitizen] from fleeing or harming the community.'" *Rodriguez*, 2026 WL 709487, at *10 (alterations in original) (quoting *German Santos*, 965 F.3d at 213–14).

Respondents must provide the petitioner with a bond hearing before an immigration judge at which the Government bears the burden of proving, by clear and convincing evidence, that the

10

petitioner presents a risk of flight or a danger to the community.  Respondents must provide this hearing by April 17, 2026, or else release the petitioner.  The parties must file an update with the court by April 20, 2026, informing the court of the result of the hearing and the petitioner's custody status.  The motion for summary judgment, (Docket Entry No. 8), is denied and the petition for a writ of habeas corpus is granted in part.[4]

SIGNED on April 10, 2026, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge

---

[4] The petitioner seeks attorney's fees and costs under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412.  (*See* Docket Entry No. 1 at 15).  The request is denied because "the EAJA does not authorize attorney's fees for successful 28 U.S.C. § 2241 motions." *Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023) *cert. denied*, 144 S. Ct. 553 (2024).